Jose **SALDANA**, Petitioner,

v.

The **STATE OF NEW YORK,** Respondent.

No. 84 Civ. 5254 (VLB).

United States District Court, S.D. New York.

July 10, 1987.

---

Steven Glickstein, Kaye, Scholer, Fierman, Hays & Handler, New York City, for Saldana.

Ann M. Donnelly, Asst. Dist. Atty., Office of the Dist. Atty., New York City, for State of N.Y.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

### I.

Petitioner Jose Saldana ("Saldana") originally filed this petition for habeas corpus

*pro se* on June 18, 1984. After ordering the respondent State of New York (the "State") to respond, I denied the petition on exhaustion grounds on January 31, 1985. Petitioner then moved for rehearing. I granted that application and then denied the petition for habeas corpus relief on the merits. I declined to appoint counsel for petitioner.[1] After I issued a certificate of probable cause, petitioner appealed.

During the pendency of his appeal, petitioner, now represented by counsel,[2] moved for relief from judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, and requested the Second Circuit to remand this action to me for further proceedings. By letter endorsement dated August 19, 1986, I expressed my inclination to grant petitioner's motion for relief from judgment, and requested that the Court of Appeals remand the matter for further proceedings.

Petitioner has now moved to amend his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2242 to set forth two additional grounds for relief: (1) that respondent denied petitioner's right to appear before the grand jury in violation of the Due Process Clause of the 14th Amendment, and (2) that respondent's denial of petitioner's grand jury rights was in violation of the Equal Protection Clause of the 14th Amendment. The motion to amend is granted.

## II.

This case arises out of a shooting incident on July 3, 1979, in Manhattan. Two police officers, observing a car fitting the description of a car reported stolen, followed the car. When it stopped, they approached it with their guns drawn. A shotgun was fired from the car, wounding one of the two police officers in the eye. Subsequently, petitioner was arrested in connection with this matter on February 8, 1980.

On February 28, 1980, shortly after his arrest but prior to any indictment, petitioner sent a letter to the New York County Criminal Court judge stating his intention to exercise his right to appear before the grand jury pursuant to N.Y.Crim.Proc.L. § 190.50(5)(a).[3] A calendar call was held before Criminal Court Judge Murray Mogel on March 11, 1980 in which Harold

1. In the petition, Saldana presented four grounds for relief. They were: (1) the prosecution failed to provide petitioner with exculpatory evidence; (2) ineffective assistance of counsel due to counsel's absence from a calendar call, and the alleged failure to hire a ballistics expert; (3) denial of petitioner's right to argue his appeal orally; and (4) denial of due process and a fair trial by the trial court improperly amending a stipulation the parties had agreed to, and through improper comments by the prosecutor during opening statements and summations.

In denying the petition, I ruled *inter alia* that petitioner did not meet his burden of proving ineffective assistance of counsel with respect to his counsel's failure to preserve the petitioner's right to appear personally before the grand jury and with respect to his counsel's failure to retain a ballistics expert.

2. By order of the Second Circuit dated May 20, 1986, the firm of Kaye, Scholer, Fierman, Hays & Handler ("Kaye Scholer") was appointed to represent petitioner. Kaye Scholer, by Steven Glickstein, Esq., has now moved to be appointed counsel for petitioner in this court pursuant to 18 U.S.C. § 3006A. That motion is granted.

3. N.Y.C.P.L. § 190.50(5)(a) provides:

5. Although not called as a witness by the people or at the instance of the grand jury, a person has a right to be a witness in a grand jury proceeding under circumstances prescribed in this subdivision:

(a) When a criminal charge against a person is being or is about to be or has been submitted to a grand jury, such person has a right to appear before such grand jury as a witness in his own behalf if, prior to the filing of any indictment or any direction to file a prosecutor's information in the matter, he serves upon the district attorney of the county a written notice making such request and stating an address to which communications may be sent. The district attorney is not obliged to inform such a person that such a grand jury proceeding against him is pending, in progress or about to occur unless such person is a defendant who has been arraigned in a local criminal court upon a currently undisposed of felony complaint charging an offense which is a subject of the prospective or pending grand jury proceeding. In such case, the district attorney must notify the defendant or his attorney of the prospective or pending grand jury proceeding and accord the defendant a reasonable time to exercise his right to appear as a witness therein.

274

Schwartz, petitioner's attorney, orally indicated petitioner's wish to testify before the grand jury. Judge Mogel inscribed in the official court record: "D wishes to testify before GJ."[4] The March 11 calendar call was continued until March 19, 1980.

At the March 19 calendar call, petitioner appeared without counsel, who was out of the country. At the beginning of the proceeding, Judge Mogel notified the assistant district attorney of petitioner's wish to testify before the grand jury. Later in the proceeding, the assistant district attorney moved to dismiss the case with leave to present it to the grand jury. As the judge granted the motion, the following exchange took place:

> THE DEFENDANT: Well, your Honor, if this case is going to be presented to the Grand Jury later on, *I would also like to testify in front of the Grand Jury in my own behalf at that time.*
> MR. TENDY [A.D.A.]: *I'll also note that on the D.A.'s papers, Judge.*
> THE COURT: All right.

(*Emphasis added*).

Petitioner never appeared before the grand jury. The grand jury indicted him on May 16, 1980. He was arraigned before Justice Roberts on September 15, 1980.

By motion dated September 15, 1980, petitioner moved *pro se* to dismiss the indictment pursuant to C.P.L. § 190.50(5)(c)[5] on the ground that he was denied his right to appear before the grand jury. The State advised Justice Roberts that petitioner did not serve written notice on the district attorney of his desire to appear before the grand jury. However, the State did not inform Justice Roberts that, in prior proceedings in Criminal Court, petitioner notified the State on the record that he wished to exercise his right to appear before the grand jury. The State also did not apprise the judge that the State itself had undertaken to make a written note of petitioner's request. Justice Roberts denied petitioner's motion to dismiss on April 16, 1981, and trial was scheduled.

Petitioner was convicted by a jury on July 22, 1981. A judgment of conviction was entered on October 1, 1981.[6]

Following his conviction, petitioner appealed *pro se* to the Appellate Division, First Department. Petitioner raised several grounds for reversal, including the fact that the indictment should have been dismissed because the prosecution unconstitutionally ignored his request to appear before the grand jury. The State argued, *inter alia*, that petitioner's September 15, 1980 motion to dismiss the indictment had not been filed until October 17, 1980 and was therefore untimely. This, as acknowledged by the State in its memorandum in opposition to this petition, was incorrect; the motion was timely. The State also argued that petitioner's notice of his wish to testify before the grand jury was insufficient, as it was not in proper form.

The Appellate Division affirmed petitioner's conviction without opinion on January 12, 1984. *People v. Saldana*, 99 A.D.2d 686, 471 N.Y.S.2d 727 (1st Dept.1984). Leave to appeal to the Court of Appeals was denied on March 15, 1984. *People v. Saldana*, 62 N.Y.2d 623, 476 N.Y.S.2d 1037, 464 N.E.2d 496 (1984).

Petitioner contends that his federal constitutional rights were infringed by the

---

**4.** Judge Mogel used the Greek letter delta rather than "D" to represent "defendant."

**5.** N.Y.C.P.L. § 190.50(5)(c) provides:
(c) Any indictment or direction to file a prosecutor's information obtained or filed in violation of the provisions of paragraph (a) or (b) is invalid and, upon a motion made pursuant to section 170.50 or section 210.20, must be dismissed; provided that a motion based upon such ground must be made not more than five days after the defendant has been arraigned upon the indictment or, as the case may be, upon the prosecutor's information resulting from the grand jury's direction to file the same. If the contention is not so asserted in timely fashion it is waived and the indictment or prosecutor's information may not thereafter be challenged on such ground.

**6.** Petitioner was sentenced as a predicate felon to concurrent terms of from twenty-five years to life on an attempted murder count, seven and one-half to fifteen years on assault and weapons counts, and one year on a stolen property count. This sentence was to be consecutive to a federal sentence petitioner is serving.

State's denial of his opportunity to appear before the grand jury, a state-created right. He argues that the notice in this case was more than sufficient to preserve his right to testify before the grand jury. In the alternative, petitioner claims that if this notice did not meet the technical requirements of C.P.L. § 190.50, the application of those requirements to the facts of this case should render the statute unconstitutional as applied. He contends that the deprivation of his grand jury rights was not harmless error.

In opposition, the State argues that petitioner's right to appear before the grand jury is not cognizable under federal habeas review. The State further contends that there was no violation of New York law because petitioner failed to give written notice to the district attorney pursuant to C.P.L. § 190.50. Finally, the State contends that even if there was a violation of New York law, the violation was harmless.

### III.

Two issues are raised by the amended petition: (1) whether petitioner's federal constitutional rights to due process and equal protection were infringed by the denial of his right to appear and testify personally before the grand jury, and (2) whether the fact that petitioner's trial counsel did not retain or consult a ballistics expert deprived petitioner of the effective assistance of counsel.

Both issues were considered in my original decision denying habeas corpus relief on the merits in the context of petitioner's claim of ineffective assistance of counsel. The amended petition requires me to consider the grand jury issue in a different light; the claim with respect to the ballistics expert remains the same, as does my disposition thereof.

### IV.

A state is not required to create a right to testify before a grand jury. Indeed, there is no federal right with respect to state prosecutions even to be indicted by a grand jury, much less to appear before one. *United States v. Thompson*, 144 F.2d 604, 605–06 (2d Cir.), *cert. den.*, 323 U.S. 790, 65 S.Ct. 313, 89 L.Ed. 630 (1944); *Ronson v. Commissioner*, 551 F.Supp. 450, 458 (S.D.N.Y.1982), *aff'd*, 742 F.2d 1446 (2d Cir. 1984), *cert. den.* 469 U.S. 841, 105 S.Ct. 144, 83 L.Ed.2d 83 (1984).

However, once a state has created a right, such as that of a defendant to appear before a grand jury, it cannot cause that right to be forfeited in a manner which is arbitrary or fundamentally unfair. *See Evitts v. Lucey*, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). In *Evitts*, the Supreme Court held that the Due Process Clause guarantees a criminal defendant the effective assistance of counsel on his first appeal as of right. In so holding, the Court ruled that while the Constitution "does not require States to grant appeals as of right to criminal defendants seeking to review alleged trial court errors ... if a State has created appellate courts ... the procedures used in deciding appeals must comport with the demands of the Due Process and Equal Protection Clauses of the Constitution." *Id.* at 393, 105 S.Ct. at 834.

In *Evitts*, the Commonwealth of Kentucky had argued that "whatever a state does or does not do on appeal—whether or not to have an appeal and if so, how to operate it—is of no due process concern to the Constitution ..." *Id.* at 400, 105 S.Ct. at 838. The Supreme Court disagreed:

> The right to appeal would be unique among state actions if it could be withdrawn without consideration of applicable due process norms. For instance, although a State may choose whether it will institute any given welfare program, it must operate whatever programs it does establish subject to the protections of the Due Process Clause. See *Goldberg v. Kelly*, 397 U.S. 254, 262, 90 S.Ct. 1011, 1017, 25 L.Ed.2d 287 (1970). Similarly, a State has great discretion in setting policies governing parole decisions, but it must nonetheless make those decisions in accord with the Due Process Clause. See *Morrissey v. Brewer*, 408 U.S. 471, 481–484, 92 S.Ct. 2593, 2600–2602, 33 L.Ed.2d 484 (1972). See also *Graham v. Richardson*, 403 U.S.

365, 374, 91 S.Ct. 1848, 1853, 29 L.Ed.2d 534 (1971); *Bell v. Burson,* 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90 (1971); *Sherbert v. Verner,* 374 U.S. 398, 404, 83 S.Ct. 1790, 1794, 10 L.Ed.2d 965 (1963); *Joint Anti-Fascist Refugee Committee v. McGrath,* 341 U.S. 123, 165–166, 71 S.Ct. 624, 646, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring). *In short, when a State opts to act in a field where its action has significant discretionary elements, it must nonetheless act in accord with the dictates of the Constitution—and, in particular, in accord with the Due Process Clause.* 469 U.S. at 400–01, 105 S.Ct. at 838–39 (*emphasis added*).[7]

██ Since the State of New York has chosen to give a putative defendant the statutory right to appear before a grand jury, it must conform the conditioning of that right to the requirements of the Due Process Clause. Thus the denial of petitioner's right to appear before the grand jury and the circumstances surrounding that denial must be analyzed in constitutional terms. Petitioner's grand jury claim

7. *See also Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 432, 102 S.Ct. 1148, 1155, 71 L.Ed.2d 265 (1982) (while legislature may elect not to confer property interest it may not constitutionally authorize deprivation of such an interest, once conferred, without appropriate procedural safeguards, which must be analyzed in constitutional terms); *Goss v. Lopez,* 419 U.S. 565, 574, 95 S.Ct. 729, 736, 42 L.Ed.2d 725 (1975) (having chosen to extend right of education to people of appellee's class, state may not withdraw that right on grounds of misconduct, absent fundamentally fair procedures to determine whether misconduct has occurred); *Wolff v. McDonnell,* 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974) (state granted entitlement to time off for good behavior cannot be arbitrarily abrogated); *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 541–42, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985) (state-created property interest in public employment may not be constitutionally abrogated without appropriate procedural safeguards).

8. The State asserts that a state court's interpretation of state law, even if arguably erroneous, is not a proper subject for federal habeas corpus review. *Pulley v. Harris,* 465 U.S. 37, 41, 104 S.Ct. 871, 874, 79 L.Ed.2d 29 (1984); *Wainwright v. Goode,* 464 U.S. 78, 83–84, 104 S.Ct. 378, 382, 78 L.Ed.2d 187 (1983). However, these cases stand for the proposition that (1)

is constitutionally cognizable, and the question as to whether the notice given was or was not sufficient to preserve his right to appear before a grand jury must be constitutionally analyzed.[8]

### V.

Notice of defendant's desire to testify before the grand jury was given in the following manner: (1) petitioner gave written notice to Judge Mogel of the criminal court; (2) Judge Mogel recorded the notice on official court records; (3) both Judge Mogel and petitioner gave oral notice on the record to the assistant district attorney; and (4) the assistant district attorney receiving the oral notice on the record undertook, on the record, to note defendant's request on the district attorney's files: "I'll also note that on the D.A.'s papers, Judge."

The plain language of the statute, C.P.L. § 190.50(5)(a), requires written notice to the District Attorney of a defendant's desire to appear before a grand jury. Petitioner argues that written notice to the

federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension, and (2) the views of a state's highest court with respect to state laws are binding on the federal courts. It is implicit in these cases that federal courts may intervene in a proper case to correct arbitrary deprivations of state-created rights. Indeed, the Supreme Court in *Wainwright* stated that "mere errors of state law are not the concern of this Court ... unless they rise for some other reason to the level of a denial of rights protected by the United States Constitution." 464 U.S. at 86, 104 S.Ct. at 383, *citing Barclay v. Florida,* 463 U.S. 939, 957–58, 103 S.Ct. 3418, 3429, 77 L.Ed.2d 1134 (1983); *Gryger v. Burke,* 334 U.S. 728, 731, 68 S.Ct. 1256, 1257, 92 L.Ed. 1683 (1948).

The State also argues that the alleged failure to allow petitioner to appear before the grand jury is not federally cognizable because "failure to follow state procedure ... is not a ground for federal habeas corpus relief." *Quiroz v. Wawrzaszek,* 749 F.2d 1375, 1377 (9th Cir.1984), *cert. den.,* 471 U.S. 1055, 105 S.Ct. 2119, 85 L.Ed.2d 483 (1985) *citing Guzman v. Morris,* 644 F.2d 1295 (9th Cir.1981). The Ninth Circuit in *Quiroz,* however, then proceeded to consider whether due process was violated. Thus it did not end its inquiry at the state procedural level but rather looked to see if the Due Process Clause was violated, as I must do in the case before me.

court and oral notice on the record by petitioner and by the court to the district attorney, acknowledged on the record by the district attorney, is sufficient notice.

Two recent New York state court decisions have liberally construed the written notice requirement. *People v. Gini,* 72 A.D.2d 752, 421 N.Y.S.2d 269 (2d Dept. 1979); *People v. Kennedy,* N.Y.L.J. Oct. 27, 1981, p. 12, col. 2 (Sup.Ct.1981).

In *Gini,* the defense counsel orally informed the prosecutor that the defendant wished to appear before the grand jury, and then did so in writing. The written notice on the district attorney, however, was concededly received subsequent to the submission of the matter to the grand jury, and the return of an indictment by the grand jury. The court held that the statutory requirement of written notice to the district attorney was not determinative: "Notwithstanding the oral notification, the prosecutor hastily submitted the case to the Grand Jury with an indictment being voted and filed on the next day ..." *Gini,* 421 N.Y.S.2d at 270. The court held that the defendant was improperly denied his right to appear before the grand jury and pursuant to C.P.L. § 190.50(5)(c) dismissed the indictment.

In *Kennedy,* the defense counsel orally informed the district attorney on the record that the defendant desired to testify and appear before the grand jury, but did not give any written notice. The defendant was indicted five days later without having been afforded the opportunity to testify before the grand jury. The court held that the oral notice to the district attorney on the record in criminal court was an acceptable surrogate for the statutorily required written notice:

In the instant case, the defendant did not give written notice as provided by CPL 190.50(5a), but did notify the district attorney on the record in the Criminal Court that he desired to testify and ap-

pear before the grand jury. Under the circumstances, and in the interest of justice, the court finds that the defendant substantially complied with the provisions of CPL 190.50(5a).

*Kennedy,* N.Y.L.J. at p. 12, col. 2. The indictment was dismissed.

 The notice in this case was certainly more than adequate to alert the district attorney that a request to testify before the grand jury had been made by petitioner. Not only did petitioner on the record orally notify both the criminal court judge and the assistant district attorney of his desire, but the assistant district attorney himself represented on the record to the court and to petitioner that he would note the request on the district attorney's papers. This, at the very least, implied that the district attorney would have written notice of petitioner's request and could have led petitioner to believe that the written notice requirement was or would be satisfied. Moreover, petitioner was without counsel at the March 19, 1980 calendar call, and as such his compliance with the requirements of notification must be construed liberally, and measured by less stringent standards than if he had been represented by counsel. *See Robles v. Coughlin,* 725 F.2d 12, 15 (2d Cir.1983).

The State, in maintaining that New York courts literally construe the requirement that written notice be given to the district attorney, relies on two cases that were decided under an earlier statute, Code of Criminal Procedure § 250.2, and not under C.P.L. § 190.50. *See People v. Weis,* 32 A.D.2d 856, 301 N.Y.S.2d 186 (3rd Dept. 1969), *cert. den.* 397 U.S. 1047, 90 S.Ct. 1377, 25 L.Ed.2d 659 (1970); *People v. Reynolds,* 35 A.D.2d 529, 313 N.Y.S.2d 223 (2d Dept.1970). Section 250.2 required notice not only to the district attorney, but also to the grand jury foreman.[9]

---

9. Section 250.2 of the Code of Criminal Procedure provides:

When any person has reason to believe that a grand jury is investigating a charge that he has committed a crime, such person, may as a matter of right, voluntarily file with the fore-

man of the Grand jury and with the district attorney of the county, a request that he be heard in person before such grand jury with reference to such charge; such request shall be personally served on both the foreman of the grand jury and on the district attorney.

The decision in *Weis* lends little, if any, support to the district attorney's argument. The decision merely states that "[d]efendant's complaint that he was not permitted to testify before the Grand Jury is not well taken since he failed to file or serve the requests specified in subdivision 2 of section 250 of the Code of Criminal Procedure." *Weis*, 301 N.Y.S.2d at 190 (*citation omitted*). There is no discussion in *Weis* as to whether or not the defendant gave any notice, either written or oral, to the district attorney.

In *Reynolds*, the defendant's counsel gave oral notice in open court to the district attorney of defendant's desire to appear before the grand jury, but defendant was not afforded an opportunity to appear. The Second Department, while refusing to dismiss the indictment because the defendant had not "serve[d] a formal request to appear and waive[d] immunity," 313 N.Y. S.2d at 224, noted its disapproval of the prosecutor's conduct:

> When defendant was arraigned in the Nassau County District Court, on the same day the homicide occurred (a Friday), the prosecutor requested and was granted an adjournment to the following Wednesday. At that same arraignment, defense counsel notified the prosecutor, in open court, that he intended to request an appearance by his client before the Grand Jury. Despite that notification, the prosecutor hastily submitted the case to the Grand Jury on the following Monday (only three days after the crime and preliminary arraignment), without notifying defense counsel that it was being presented. Such tactics do not comport with traditional concepts of fair play and should not by used by a prosecutor.

*Id.* at 225. There was no showing in *Reynolds* that the defendant provided any notice to the grand jury foreman.

Other cases either directly or indirectly support petitioner's position that, given all of the circumstances in this case, the notification sufficiently complied with the statute's requirements.

In *People v. Leggio*, 133 Misc.2d 320, 507 N.Y.S.2d 131, 133 (Sup.Ct.N.Y.Cty.1986),

defendant claimed that the grand jury proceeding was defective within the meaning of C.P.L. §§ 210.35 and 190.50(5) because he was denied the opportunity to testify before the grand jury on his own behalf. The essence of his claim was that a letter he wrote to the Special Narcotics Prosecutor indicated that he had reserved his right to testify in the grand jury, and that this request was ignored. The court rejected defendant's argument, ruling that "[a] request to testify before the grand jury must be specific and unequivocal before the Court can entertain a motion to dismiss the indictment pursuant to CPL 190.50(5)(a)." *Id.* at 132. In so holding, the court identified the issue in the case as whether a "proper request evincing [defendant's] desire to testify before the grand jury was ever made." *Id.* at 133. It noted that the defendant's letter only stated that he "reserved" the right to testify:

> That communication merely reiterates a right which the legislature created for *any* defendant in Leggio's position. I hold that *in order to effectuate that right, the defendant must activate it in an affirmative manner by making an unqualified, specific request to come before the grand jury and testify. It is only then that defendant's right to testify accrues....* "Reserving" one's right to testify, as Leggio did, and "requesting" to appear before the grand jury, as the statute requires, are not synonymous. Since defendant's letter did not constitute a *request* to testify within the meaning of the statute, the prosecutor had no obligation to notify Leggio to appear before the grand jury.

*Id.* at 133 (*emphasis added*). Applying the standard set forth in *Leggio*, it is clear that Saldana "activated" his right to appear "in an affirmative manner by making an unqualified, specific request to come before the grand jury and testify," even if his notification to the assistant district attorney did not strictly comply with the statute.

In *People v. Phillips*, 88 A.D.2d 672, 450 N.Y.S.2d 925 (3d Dept.1982), the Third Department addressed the notice that the district attorney must provide to a defendant

who has been "arraigned in a local criminal court upon a currently undisposed felony complaint dealing with the subject matter that grand jury proceedings are to commence." *Id.* at 926. The record in *Phillips* demonstrated that oral notice to defendant's attorney was given a week in advance of the scheduled date of presentment. The Third Department ruled that this "oral notice sufficiently complied with the People's statutory obligation under [C.P.L. § 190.-50(5)]." *Id.* (*citations omitted*). If, as the Third Department suggests, oral notice is sufficient compliance by the district attorney, then it is at least arguable that oral notice on the record and in open court would also constitute substantial compliance by the defendant.[10]

In sum, a district attorney "is under a duty to act consistently in good faith when dealing with a defendant's right to appear and testify before a Grand Jury." *People v. Martinez*, 111 Misc.2d 67, 443 N.Y.S.2d 576, 578 (Sup.Ct. Queens Cty.1981). Petitioner was assured that his request to testify would be put in writing and he justifiably assumed that no further action was required to satisfy the notice requirement. Taking this fact and the numerous oral notices given to the State into account, as

well as the relevant New York decisions, I find that petitioner's notice was sufficient[11] to preserve his right to testify before the grand jury, and that the Due Process Clause was violated by not allowing petitioner to testify.[12]

## VI.

I next consider whether the denial of petitioner's right to appear before the grand jury constituted harmless error.[13]

■ Before a federal constitutional error can be held harmless, the court must be able to conclude that it was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). Moreover, a constitutional error "casts on someone other than the person prejudiced by it a burden to show that it was harmless." *Id.*; *Hawkins v. Lefevre*, 758 F.2d 866, 877 (2d Cir.1985). The burden thus rests on the State to establish that the error was harmless.[14] The error must be analyzed as to its effect on "the validity of the underlying judgment [or as to its effect on] the integrity of the process by which that judgment was obtained." *Hawkins*, 758 F.2d at 878. *See also U.S. v. Bueno-Risquet*, 799 F.2d 804, 812 (2d Cir.1986).

---

**10.** In *People v. Ali*, 130 Misc.2d 1013, 498 N.Y.S.2d 264 (Sup.Ct. West Cty.1986), defendant conceded that he did not provide written notice under C.P.L. § 190.50(5)(a). The court then noted that "the People represent that they never received any oral notice from the defendant, or his former counsel, requesting the opportunity to testify at the grand jury." *Id.* at 264–65. Implicit in the court's analysis may be the recognition that oral notice constitutes at least some compliance with the statute.

**11.** Since I believe that petitioner's notice was sufficient, I shall not address petitioner's argument as to the constitutionality of C.P.L. § 190.-50(5)(a).

Similarly, I shall not separately address petitioner's argument that he was denied effective assistance of counsel with respect to his grand jury rights. Since the argument was raised by petitioner in the alternative and I have found that the notice was sufficient, it is unnecessary in deciding this application. In any event, by my memorandum order dated October 11, 1985 I have already rejected this argument.

**12.** One troubling aspect in resolving this question is the Appellate Division's affirmance without opinion of petitioner's conviction. Because

the Appellate Division did not render an opinion, it is unclear if it considered the issue of whether petitioner's repeated oral notices substantially complied with the provisions of N.Y.C.P.L. § 190.50(5)(a).

**13.** Petitioner suggests in a footnote that a harmless error analysis may not apply here. He relies on two Supreme Court decisions in which criminal defendants alleged that deprivation of their state-created right to appeal was unconstitutional, and where no harmless error analysis was invoked. *Evitts v. Lucey*, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985); *Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956).

**14.** The fact that the burden rests on the state and not on the petitioner distinguishes this harmless error analysis from the prejudice requirement in petitioner's original claim of ineffective assistance of counsel. *See* October 11, 1985 Memorandum Order at 6–7. In the original claim, the burden was on petitioner and he did not satisfy it.

Since petitioner's right to appear before a grand jury is state-created and the finding of constitutional error is predicated on the State's failure to afford petitioner procedural due process, I initially look to New York law to determine whether the deprivation of petitioner's right was harmless.

■ Under New York law a violation of a defendant's right to testify before the grand jury can never be harmless.[15] This proposition is supported by two provisions of New York criminal procedure law: 1) this type of error in grand jury proceedings renders the indictment automatically defective pursuant to C.P.L. § 210.35[16]; and 2) this type of error necessitates the automatic dismissal of a defectively secured indictment under C.P.L. § 190.50(5)(c).[17] Moreover, under New York case law, a subsequent conviction will not cure the deprivation of grand jury rights arising under C.P.L. § 190.50. *People v. Durante*, 97 A.D.2d 851, 469 N.Y.S.2d 18 (2d Dept.1983); *People v. Gini*, 72 A.D.2d 752, 421 N.Y. S.2d 269 (2d Dept.1979). Under New York law, the denial of petitioner's right to appear before the grand jury was not harmless.

■ Even if New York law is not controlling, the State has not met its burden of proving the error harmless beyond a rea-

sonable doubt. The State emphasizes that petitioner declined the opportunity to appear before the petit jury which convicted him, arguing that it is "simply impossible to believe that he would have declined the opportunity to testify if he had anything 'crucial' to say in his defense." The State also notes that petitioner does not identify any "crucial" evidence of which he was deprived. In addition, the State argues that petitioner attempts to relitigate the theory pressed at trial that someone else actually shot the police officer. The petit jury was presented with precisely these arguments and rejected them, from which the State concludes that petitioner's guilt had been established under the beyond-a-reasonable-doubt standard. Finally, since petitioner could have been impeached with his criminal record before the grand jury, and the threat of such impeachment was admittedly the reason for petitioner's unwillingness to testify before the petit jury, the State finds petitioner's position wholly untenable.

The State's arguments are without merit. First, petitioner argues that had he been afforded the opportunity to testify before the grand jury, the grand jury might not have indicted him at all, or more likely might have chosen to indict him on lesser

15. Under the New York Constitution, Article I, Section 6, a person has the right to be tried only upon a valid indictment. The New York Constitution Article I, Section 6 reads:

No person shall be held to answer for a capital or otherwise infamous crime (except in cases of impeachment, and in cases of militia when in actual service, and the land, air and naval forces in time of war, or which this state may keep with the consent of congress in time of peace, and in cases of petit larceny, under the regulation of the legislature), unless on indictment of a grand jury, except that a person held for the action of a grand jury upon a charge for such an offense, other than one punishable by death or life imprisonment, with the consent of the district attorney, may waive indictment by a grand jury and consent to be prosecuted on an information filed by the district attorney; such waiver shall be evidenced by written instrument signed by the defendant in open court in the presence of his counsel.

16. N.Y.C.P.L. § 210.35 reads as follows:

A grand jury proceeding is defective within the meaning of paragraph (c) of subdivision one of section 210.20 when:
1. The grand jury was illegally constituted; or
2. The proceeding is conducted before fewer than sixteen grand jurors; or
3. Fewer than twelve grand jurors concur in the finding of the indictment; or
4. The defendant is not accorded an opportunity to appear and testify before the grand jury in accordance with the provisions of section 190.50; or
5. The proceeding otherwise fails to conform to the requirements of article one hundred ninety to such degree that the integrity thereof is impaired and prejudice to the defendant may result.
Under subparagraphs 1 through 4 of § 210.35 the grand jury proceeding is by operation of law defective when the situation provided against occurs. It is only under subparagraph 5 that one considers the degree of harm in determining whether the proceeding is defective.

17. See footnote 5, *supra*.

charges. This type of argument finds support in a recent Supreme Court decision:

> The grand jury does not determine only that probable cause exists to believe that a defendant committed a crime, or that it does not. In the hands of the grand jury lies the power to charge a greater offense or a lesser offense; numerous counts or a single count; and perhaps most significant of all, a capital offense or a noncapital offense—all on the basis of the same facts. Moreover, "[t]he grand jury is not bound to indict in every case where a conviction can be obtained." *United States v. Ciambrone*, 601 F.2d 616, 629 (CA2 1979) (Friendly, J., dissenting). Thus, even if a grand jury's determination of probable cause is confirmed in hindsight by a conviction on the indicted offense, that confirmation in no way suggests that the discrimination did not impermissibly infect the framing of the indictment and, consequently, the nature or very existence of the proceedings to come.

*Vasquez v. Hillery*, 474 U.S. 254, 263, 106 S.Ct. 617, 623, 88 L.Ed.2d 598 (1986). While the *Vasquez* decision was expressly limited to the problem of racial discrimination by the Supreme Court's later decision in *United States v. Mechanik*, 475 U.S. 66, 70–71 n. 1, 106 S.Ct. 938, 942 n. 1, 89 L.Ed.2d 50 (1986), its underlying rationale applies to the case *sub judice*.

█ In addition, the fact that petitioner did not testify before the petit jury cannot form the basis of any adverse inference regarding the substance of his testimony, for this would violate his Fifth Amendment rights. *See Griffin v. California*, 380 U.S. 609, 614, 85 S.Ct. 1229, 1232, 14 L.Ed.2d 106 (1965) (comment by court or prosecutor regarding accused's refusal to testify at trial outlawed by Fifth Amendment because it is a penalty imposed for exercising constitutional privilege). Thus the State's argument that petitioner has not come forward with "crucial" evidence is unpersua-

sive. Additionally, under New York State law the disclosure of petitioner's proposed grand jury testimony "is not required either by statute or case law." *People v. Jones*, 126 Misc.2d 104, 481 N.Y.S.2d 594, 596 (Sup.Ct. Kings Cty.1984). Moreover, while it is true that petitioner could have been impeached at the grand jury level, he would not have waived his right to remain silent at trial where his innocence is adjudicated with finality. *United States v. Miranti*, 253 F.2d 135, 139 n. 3 (2d Cir.1958); McCormick, *Evidence* § 132 (1972).

The reliance by the State on the Supreme Court's recent decision in *United States v. Mechanik*, 475 U.S. 66, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986) is misplaced. Because of the decision's complex procedural background, I examine it in detail.

In *Mechanik*, a federal grand jury returned an indictment charging defendants with drug-related offenses and conspiracy. The indictment was concededly free from any claim of error. A superseding indictment was subsequently returned in which the conspiracy charge was expanded. In support of the superseding indictment, the government presented the testimony of two law enforcement agents who were sworn together and questioned in tandem before the grand jury. Defendants did not learn about this joint testimony until after trial began, and then moved for dismissal of the indictment on the grounds, *inter alia*, that this simultaneous presence of the two agents had violated F.R.Crim.P. 6(d).[18] The motion was denied initially by the judge presiding over the trial, and then denied again on reconsideration by a second judge after the jury had returned a guilty verdict; the first trial judge had been hospitalized. The second judge ruled that while Rule 6(d) had been violated, the violation had not harmed the defendants.

A divided Fourth Circuit reversed the conspiracy convictions, affirmed the others, and dismissed the conspiracy portion of the

---

**18.** F.R.Crim.P. 6(d) provides:

(d) *Who May Be Present.* Attorneys for the government, the witness under examination, interpreters when needed and, for the purpose of taking the evidence, a stenographer or operator of a recording device may be present while the grand jury is in session, but no person other than the jurors may be present while the grand jury is deliberating or voting.

indictment, finding that the violation of Rule. 6(d) tainted only that portion of the superseding indictment that related to the conspiracy convictions. A divided *en banc* decision agreed. *See* 106 S.Ct. at 940–41.

The Supreme Court reversed to the extent that the judgment of the Court of Appeals set aside the conspiracy convictions and dismissed the indictment, and otherwise affirmed. Justice Rehnquist writing for a majority of the Court assumed initially that there was a violation of Rule 6(d), but found it harmless as a matter of law:

> The error involving· Rule 6(d) in these cases had the theoretical potential to affect the grand jury's determination whether to indict these particular defendants for the offenses with which they were charged. But the petit jury's subsequent guilty verdict not only means that there was probable cause to believe that the defendants were guilty as charged, but that they are in fact guilty as charged beyond a reasonable doubt. *Measured by the petit jury's verdict, then, any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt.*

106 S.Ct. at 942–43 (*emphasis added*).

The *Mechanik* Court gave short shrift to the argument asserted by the defendants that the indictment should not be compared to the evidence produced by the Government at trial. This argument formed the basis for Justice O'Connor's concurring opinion, in which Justices Brennan and Blackmun joined. She wrote separately because she believed that "the analysis adopted by the Court for determining the effect of a violation of the rules governing the conduct of grand juries effectively renders those rules a dead letter, thereby seriously undermining the grand jury's traditional function of protecting the innocent from unwarranted public accusation." 106 S.Ct. at 943. Because a Rule 6(d) violation affects the grand jury proceeding and is not a trial error, Justice O'Connor argued that "the logical focus of the harmless error inquiry is an examination of the influ-

ence of the error on the charging decision." *Id.* at 944.

While *Mechanik* at first glance seems on point, it is actually inapposite.

First, the trial court in *Mechanik,* unlike the trial court in this case, was not informed of the grand jury irregularity until the middle of the trial. Secondly, the specific issue presented here, the appropriate standard to apply when the grand jury error was brought to the trial court's attention before trial, was expressly reserved by the court in *Mechanik.* 106 S.Ct. at 943. Additionally, the Supreme Court decided *Mechanik* under Federal Rule of Criminal Procedure 6(d), which is a provision designed to insure "that grand jurors sitting without direct supervision of a judge, are not subject to undue influence." *Id.* at 941. The prejudice entailed in having two witnesses appear together before the grand jury is that the charging jury may be subjected to such undue influence: no statutory consequence attends a violation of Rule 6(d). The purpose of C.P.L. § 190.-50(5)(a), on the other hand, is to afford a defendant the right to testify before the grand jury, and to give him an opportunity, through that testimony, to attempt to reduce the scope of the charge which may be returned, or even to deflect the charge entirely. The denial of this right cannot be cured at trial, and there is no way the State can establish that the denial of the right was harmless beyond a reasonable doubt, since the consequences of petitioner's aborted appearance before the grand jury will never be known. It is undoubtedly for this reason that New York law provides for automatic dismissal of an indictment when the statutory right to appear before the grand jury has been denied to a defendant. N.Y.C.P.L. § ·210.35, subpar. 4.

## VII.

Petitioner's claim is federally cognizable. The notice he gave was sufficient to preserve his right to testify before the grand jury, the deprivation of which was not harmless.

Petitioner's motion for relief from judgment pursuant to Fed.R.Civ.P. 60(b) is

granted. His petition for a writ of habeas corpus is granted. The indictment is set aside, as is the conviction which was based thereon. If the matter is submitted to another grand jury, the defendant must be given an opportunity to testify before it.

SO ORDERED.