WAINWRIGHT, SECRETARY, FLORIDA DEPART-
MENT OF CORRECTIONS *v.* GOODE

No. 83–131. Decided November 28, 1983

PER CURIAM.

Petitioner, the Secretary of the Florida Department of Corrections, requests review of a decision of the United States Court of Appeals for the Eleventh Circuit ordering the District Court for the Middle District of Florida to issue a writ of habeas corpus conditional upon the resentencing of respondent. For the reasons set out below, we reverse.

I

On March 5, 1976, respondent, Arthur Goode, took a 10-year-old boy ("Jason") from a school bus stop in Florida, sexually assaulted him, and strangled him with a belt. Respondent then went to Maryland where he had previously escaped from a mental hospital. While in Maryland, he kidnaped two young boys, one of whom he killed in Virginia. The State of Virginia tried and convicted respondent of the Virginia murder and sentenced him to life imprisonment.

Goode was returned to Florida to stand trial for the murder he committed there. Although he entered a plea of "not guilty," there was never a question whether Goode committed the crime, since at trial he testified in graphic detail as to

the circumstances of the killing. He was found guilty by a jury of first-degree murder.

At the sentencing phase of the trial, Goode again took the witness stand. He stated that he was "extremely proud" of having murdered Jason "for the fun of it," that he had "absolutely no remorse" over the murder, and that he would do it again if given the chance. The jury recommended the death penalty.[1] Prior to the issuance of the trial court's judgment, Smith, an attorney who had assisted in Goode's defense, made a statement on Goode's behalf to the effect that society would gain more if Goode were given a life sentence and subjected to scientific study to determine the causes of sexual abuse of children.

After Smith's statement, the trial judge issued his findings on factors in aggravation and mitigation.[2] He found that three statutory aggravating circumstances had been proved beyond a reasonable doubt. He also found two mitigating circumstances but determined that they did not outweigh the aggravating circumstances. He concluded that Goode should be sentenced to death.

After imposing the death sentence, the trial judge made the following statement:

> "'In closing I want to address myself to Counsel Smith's remarks for just a moment. The question of why should this man be executed for what he has done is

---

[1] Under Florida law, the jury does not determine the sentence. Instead, its recommendation is merely advisory. Fla. Stat. § 921.141(2) (Supp. 1983). For a more complete description of the Florida capital-sentencing system, see *Barclay* v. *Florida*, 463 U. S. 939 (1983).

[2] In Florida, three separate determinations must be made prior to the imposition of a death sentence: (1) that the presence of at least one statutory aggravating circumstance has been proved beyond a reasonable doubt; (2) that there are insufficient mitigating circumstances to outweigh the aggravating circumstances; and (3) that death is the appropriate penalty in light of the aggravating and mitigating circumstances. Fla. Stat. § 921.141 (Supp. 1983).

a question that the Court has wrestled with for several days and has carefully considered the circumstances, but I have to be able to answer to myself why should I invoke the awesome punishment of death. Could not something be learned from Arthur? Am I not doing as I have seen and heard many do and merely so outraged by the activities that he has done that possibly my reason and judgment are blurred? I believe not.

"'If organized society is to exist with the compassion and love that we all espouse, there comes a point when we must terminate that, and there are certain cases and certain times when we can no longer help, we can no longer rehabilitate and there are certain people, and Arthur Goode is one of them, [whose] actions demand that society respond and all we can do is exterminate.

"'Philosophically I believe that in certain limited instances we should do that. In this particular case that is my opinion, and that is my order, and the only answer I know that will once and for all guarantee society, at least as far as it relates to this man, is that he will never again kill, maim, torture or harm another human being, and as you said in trial, Arthur, maybe I don't know who we blame. God forgive you of those desires or something in your environment that has made you have them, and whoever is to blame is beyond the power of this Court.

"'You have violated the laws, you have had your trial and I am convinced that the punishment is just and proper, and truthfully, may God have mercy on your soul.'" 704 F. 2d 593, 604 (CA11 1983).

The conviction and sentence were affirmed on direct appeal to the Florida Supreme Court. *Goode* v. *State*, 365 So. 2d 381 (1978). This Court denied Goode's petition for certiorari. *Goode* v. *Florida*, 441 U. S. 967 (1979). Thereafter, he filed a motion in state court to vacate the judgment and sentence, contending, *inter alia*, that the sentencing judge

considered an aggravating circumstance—future dangerousness—that is impermissible under Florida law.[3]  The motion was denied, and the denial was affirmed by the Florida Supreme Court on the ground that the matter should have been raised on direct appeal.  *Goode* v. *State*, 403 So. 2d 931 (1981).  The Governor issued a warrant ordering that Goode be executed on March 2, 1982.

Goode then filed a petition for a writ of habeas corpus in the Florida Supreme Court, claiming that his appellate counsel had been ineffective because he had failed to challenge the trial judge's reliance on the nonstatutory aggravating circumstance.  *Goode* v. *Wainwright*, 410 So. 2d 506 (1982).  That court reviewed the record of the sentencing hearing and determined that the trial judge had not relied upon the impermissible factor.  The court was of the view that the trial judge was merely replying to the statements of Smith and explaining why the result of his weighing process was correct.  It stated that "the record fails to show that the trial judge improperly considered non-statutory aggravating circumstances."  *Id.*, at 509.  Consequently, it denied Goode's petition.

Goode then sought a writ of habeas corpus in Federal District Court.  That court found the claim that the trial judge improperly considered a nonstatutory aggravating circumstance in imposing sentence "simply not supported by the record."  App. to Pet. for Cert. A–140.  It stated that Goode was "[t]aking these remarks completely out of context," *id.*, at A–143, and that they were "made in response to counsel and in philosophical justification of capital punish-

---

[3] The Florida statute expressly limits consideration of aggravating circumstances to those enumerated in the statute.  Fla. Stat. § 921.141(5) (Supp. 1983).  In *Miller* v. *State*, 373 So. 2d 882 (1979), the Florida Supreme Court held that it was error for a trial court to consider as an aggravating circumstance the probability that the defendant might commit acts of violence in the future.

ment both generally and as applied in [Goode's] case," *id.*, at A–144. It concluded that it "would be a gross distortion to conclude on that basis that the statute was not obeyed," *ibid.*, and dismissed the petition. It then granted a certificate of probable cause for appeal, but denied a motion for a stay of execution pending appeal.

The Court of Appeals for the Eleventh Circuit granted Goode's motion for a stay of execution. *Goode* v. *Wainwright*, 670 F. 2d 941 (1982). On review of the merits, a panel of that court assumed, *arguendo*, that the Florida Supreme Court's finding that the sentencing judge had not relied upon Goode's future dangerousness was entitled to a presumption of correctness under 28 U. S. C. § 2254(d)(8). 704 F. 2d, at 605. However, it concluded from its evaluation of the record of the sentencing proceeding that the state-court finding was "not fairly supported by the record as a whole." *Ibid.* The court then reasoned that execution of Goode would be a "unique, freakish instance," because he "would have been executed in reliance upon the recurrence factor, when all others in Florida have not been, and, pursuant to the law established in *Miller*, cannot be in the future." *Id.*, at 608. The court concluded that such an "arbitrary and capricious manner" of execution cannot be countenanced under the Eighth Amendment. *Ibid.* We reverse.

## II

Whether the asserted reliance by the sentencing court on a nonstatutory aggravating circumstance is considered to be an issue of law or one of fact, we are quite sure that the Court of Appeals gave insufficient deference to the Florida Supreme Court's resolution of that issue. We first assume that the issue is one of law.

It is axiomatic that federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension. *Engle* v. *Isaac*, 456 U. S. 107 (1982);

*Smith* v. *Phillips*, 455 U. S. 209 (1982). Section 2254 is explicit that a federal court is to entertain an application for a writ of habeas corpus "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." The Eleventh Circuit's ultimate conclusion was that the sentencing proceeding violated the Eighth Amendment, but it is critical to understand the reasoning it employed in reaching that result. It acknowledged that the Federal Constitution does not prohibit consideration of a defendant's future dangerousness. In fact, the court described the factor as "highly relevant to the purposes underlying capital sentencing." 704 F. 2d, at 608, n. 18. Nevertheless, future dangerousness was a nonstatutory aggravating circumstance that could not be relied upon to impose the death sentence without violating Florida law. Because the Court of Appeals was of the view that the sentencing judge had relied on future dangerousness, the death sentence violated state law and was deemed to be an arbitrary punishment under the Eighth Amendment.

The difficulty with all of this is that the Florida Supreme Court had concluded that the trial judge had not improperly relied on future dangerousness in imposing the death penalty. If the interpretation of the trial court's remarks is deemed a legal issue, it is surely an issue of state law that the Court of Appeals should have accepted, since the views of the State's highest court with respect to state law are binding on the federal courts. See, *e. g., Brown* v. *Ohio*, 432 U. S. 161, 167 (1977); *Garner* v. *Louisiana*, 368 U. S. 157, 169 (1961). If the Florida Supreme Court's conclusion that the death sentence was consistent with state law is accepted, the constitutional violation found by the Court of Appeals dissolves.

### III

If, on the other hand, the issue of whether the sentencing judge relied upon future dangerousness in imposing the death

sentence is characterized as an issue of historical fact to be decided on the transcript of the judge's remarks at the sentencing proceeding, we are convinced that the Court of Appeals failed to give proper weight to the state court's resolution of this factual issue.

Under 28 U. S. C. § 2254(d)(8), a federal court, in ruling on a petition for a writ of habeas corpus, is not to overturn a factual conclusion of a state court unless the conclusion is not "fairly supported by the record." That rule applies equally to findings of trial courts and appellate courts, *Sumner* v. *Mata*, 449 U. S. 539, 545–547 (1981), and requires reversal here.

The seven justices of the Supreme Court of Florida concluded from their review of the sentencing proceeding that the trial judge had not relied upon the impermissible factor. On federal habeas review, the District Court likewise concluded that the sentencing judge did not rely on future dangerousness, emphasizing that its review of the record led it to the "same, independent conclusion" as that reached by the Florida court. Consequently, eight judges have concluded from their review of the record that the trial court did not rely on predictions of future dangerousness. A three-member panel of the Court of Appeals for the Eleventh Circuit, on the other hand, concluded that the state court's finding was not fairly supported by the record.

At best, the record is ambiguous. The trial judge might have been describing his consideration of Goode's future dangerousness in the weighing process, or he might have been merely explaining, after having imposed the death sentence in accordance with state standards and without regard to future dangerousness, why he thought that application of the state standards to Goode yielded an intuitively correct result. Because both of these conclusions find fair support in the record, we believe the Court of Appeals erred in substituting its view of the facts for that of the Florida Supreme Court.

## IV

Even if the Court of Appeals had been correct in concluding that the sentencing judge had relied on a factor unavailable to him under state law, it erred in reversing the District Court's dismissal of Goode's habeas petition.

Although recognizing that a State is free to enact a system of capital sentencing in which a defendant's future dangerousness is considered, the Court of Appeals believed that the Florida court's failure to follow Florida law constituted a violation of the Eighth and Fourteenth Amendments because it would result in an "arbitrary" and "freakish" execution. 704 F. 2d, at 610.

In *Barclay* v. *Florida*, 463 U. S. 939 (1983), the Court upheld a death sentence despite the reliance by the trial court on an aggravating circumstance that was improper under state law. The plurality stated that "mere errors of state law are not the concern of this Court, *Gryger* v. *Burke*, 334 U. S. 728, 731 (1948), unless they rise for some other reason to the level of a denial of rights protected by the United States Constitution." *Id.*, at 957–958. The critical question "is whether the trial judge's consideration of this improper aggravating circumstance so infects the balancing process created by the Florida statute that it is constitutionally impermissible for the Florida Supreme Court to let the sentence stand." *Id.*, at 956.

We have great difficulty concluding that the balancing process was so infected. A properly instructed jury recommended a death sentence. On direct appeal to the Florida Supreme Court, the court stated that "[c]omparing the aggravating and mitigating circumstances with those shown in other capital cases and weighing the evidence in the case sub judice, our judgment is that death is the proper sentence." *Goode* v. *State*, 365 So. 2d, at 384–385. Whatever may have been true of the sentencing judge, there is no claim

that in conducting its independent reweighing of the aggravating and mitigating circumstances the Florida Supreme Court considered Goode's future dangerousness. Consequently, there is no sound basis for concluding that the procedures followed by the State produced an arbitrary or freakish sentence forbidden by the Eighth Amendment.

The motion of respondent for leave to proceed *in forma pauperis* is granted.

The petition for certiorari is granted, the judgment of the Court of Appeals for the Eleventh Circuit is reversed, and the case is remanded for proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE BRENNAN, with whom JUSTICE MARSHALL joins, dissenting.

Adhering to my view that the death penalty is in all circumstances cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments, *Gregg* v. *Georgia,* 428 U. S. 153, 227 (1976) (BRENNAN, J., dissenting), I would deny the petition for certiorari.

Even if I were to accept the prevailing view that the death penalty is constitutionally permissible under certain circumstances, I would nonetheless object to the Court's summary reversal of the decision of the Court of Appeals. By taking this step, the Court adds to a growing and disturbing trend toward summary disposition of cases involving capital punishment.

When an intervening decision of this Court may affect a lower court's decision, our practice has generally been to grant the petition for certiorari, vacate the lower court judgment, and remand for further consideration in light of the intervening decision. See, *e. g., Wainwright* v. *Henry,* 463 U. S. 1223 (1983). In the present case, as the Court acknowledges, our recent decision in *Barclay* v. *Florida,* 463

U. S. 939 (1983), plainly bears upon the constitutional questions considered by the Court of Appeals. That the Court today chooses to reverse summarily instead of remanding in light of *Barclay*, not only contradicts our general practice, but also demonstrates once again the Court's disquieting readiness to dispose of cases involving the death penalty on the merits without benefit of full briefing or oral argument. See *Maggio* v. *Williams, ante,* p. 56 (BRENNAN, J., dissenting).

I dissent.