**Wilbert Lee EVANS,**
**Petitioner–Appellee,**

v.

**Raymond MUNCY; Edward Murray; Virginia Department of Corrections; Attorney General of the Commonwealth of Virginia, Respondents–Appellants.**

No. 90–4007.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 16, 1990.

Decided Oct. 16, 1990.

Certiorari Denied Oct. 17, 1990.

See 111 S.Ct. 309.

---

Donald R. Curry (argued), Sr. Asst. Atty. Gen., Crim. Litigation Section, Office of Atty. Gen. of Va., Richmond, Va., for appellants.

Mark D. Cahn (argued), Wilmer, Cutler & Pickering, Washington, D.C. (Arthur F. Mathews, Thomas F. Connell, Wilmer, Cutler & Pickering, Washington, D.C., on brief), for appellee.

Before ERVIN, Chief Judge, and HALL and WILKINSON, Circuit Judges.

PER CURIAM:

Before this court is the Commonwealth of Virginia's motion to vacate a stay of execution entered by the United States District Court for the Eastern District of Virginia. We reverse the judgment of the district court and vacate the stay of execution.

### I.

The facts surrounding the offense have been set forth in our prior opinion. *Evans v. Thompson,* 881 F.2d 117 (4th Cir.1989). On January 27, 1981, petitioner Wilbert Lee Evans shot and killed Deputy Sheriff William Truesdale while attempting to escape from state custody. Truesdale was escorting petitioner, at the time a North Carolina prisoner, to Alexandria, Virginia where he was to testify as a witness for the Commonwealth of Virginia. Petitioner had pretended to be a willing witness for the Commonwealth, but his sole purpose in agreeing to testify had been to engineer an escape during his transportation from North Carolina to Virginia. He planned to kill anyone who attempted to prevent his escape and he acted on this intent when he killed Deputy Truesdale.

In June 1981, petitioner was convicted of capital murder and sentenced to death in the Circuit Court of Alexandria, Virginia. Evans appealed this judgment to the Supreme Court of Virginia, which affirmed the judgment. On March 22, 1982, the United States Supreme Court denied Evans' petition for a writ of certiorari.

Petitioner then filed a petition for a writ of habeas corpus on April 9, 1982, in Alexandria Circuit Court. Evans amended this petition twice in 1982.

On April 12, 1983, the Commonwealth confessed error in petitioner's sentencing proceedings and acknowledged that his death sentence should be vacated because erroneous evidence of his prior convictions had been admitted at trial. The circuit court vacated petitioner's death sentence and directed that a hearing be held to determine whether he should be resentenced by a jury or have his sentence reduced to a life term. The circuit court determined that Evans could be resentenced and the court impaneled a new jury which heard evidence of petitioner's history of violent criminal conduct. That jury recommended the death penalty based upon a finding of petitioner's "future dangerousness." The jury heard evidence from which it could conclude that Evans would be dangerous in the future: in 1964, he threatened a police officer with a knife; in 1974, he threatened prison officials while demanding transfer to another prison facility; in 1978, he killed a person during an argument; and in 1981, he assaulted and threatened credit union employees during an armed robbery. *Evans v. Commonwealth,* 228 Va. 468, 323 S.E.2d 114, 122 (1984). On March 7, 1984, the trial court imposed the death penalty. The Virginia Supreme Court affirmed the sentence and the United States Supreme Court denied certiorari.

In May 1985, petitioner filed a third amended petition for a writ of habeas corpus in Alexandria Circuit Court. The circuit court dismissed his petition on May 19, 1986. The Virginia Supreme Court and the United States Supreme Court denied review.

On October 5, 1987, petitioner filed for a writ of habeas corpus in the Eastern District of Virginia. The district court reject-

ed his petition and this court affirmed the judgment. The United States Supreme Court denied review on June 25, 1990.

On June 26, 1990, Evans filed petitions for a writ of audita querala, for leave to file a bill of review, and for a writ of habeas corpus in the Circuit Court of Alexandria, Virginia. The circuit court dismissed these petitions and entered an order setting Evans' execution for October 17, 1990. On August 23, 1990, Evans filed a petition for appeal with the Virginia Supreme Court. The Virginia Supreme Court denied Evans' petition for appeal.

On October 5, 1990, Evans filed a habeas petition in federal district court for the Eastern District of Virginia. The district court granted a stay of execution. The Commonwealth of Virginia appeals this stay of execution.

## II.

The sole aggravating factor the jury found for imposing the death penalty on petitioner was "future dangerousness." On May 31, 1984, when petitioner was an inmate in Mecklenburg Correctional Center, he allegedly played a significant role in quelling a prison uprising and in protecting prison guards and nurses. Petitioner now contends that this behavior calls into question the jury's finding of "future dangerousness."

Petitioner raises two related claims in support of his motion to stay his execution. Petitioner claims that the Eighth and Fourteenth Amendments prohibit the execution of a defendant when his behavior subsequent to sentencing casts doubt on whether the sole aggravating factor supporting the death sentence exists. Petitioner also claims that the Commonwealth of Virginia violated his Eighth and Fourteenth Amendment rights by failing to provide a process to hear and decide his claim that new evidence relating to his conduct while incarcerated demonstrates that he should not be executed. The district court stayed petitioner's execution on the basis of these claims.

We cannot accept these claims for several reasons. First, the claims constitute a "new rule" which federal courts may not use in collateral proceedings to overturn a final state conviction. Second, petitioner's claims are not constitutional violations remediable by a federal court. Any remedy for these claims must lie within the state system and has traditionally been a matter for the executive branch in clemency proceedings.

## A.

Initially, we believe that entry of a stay fails to comport with the "new rule" doctrine announced in *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). In *Teague,* the Court held that "habeas corpus cannot be used as a vehicle to create new constitutional rules of criminal procedure unless those rules would be applied retroactively to all defendants on collateral review through one of the two exceptions we have articulated." 109 S.Ct. at 1078. To determine whether a petitioner advocates a new rule, a federal habeas court must "determine whether a state court considering [the petitioner's] claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule [the petitioner] seeks was required by the Constitution." *Saffle v. Parks,* —— U.S. ——, 110 S.Ct. 1257, 1260, 108 L.Ed.2d 415 (1990).

On collateral review, petitioner advocates this rule: the Constitution requires a state to reestablish the validity of an error-free sentence because a prisoner desires to present character evidence based on his post-sentencing conduct. Clearly, this is a "new rule" under Supreme Court precedent. The novelty of this position is evidenced by the utter paucity of case law in support of it. If the Virginia courts had been asked to consider Evans's claim at the time his sentence became final, those courts would hardly have "felt compelled by existing precedent to conclude" that the rule Evans is seeking was "required by the Constitution."

Moreover, neither of the two exceptions justifying the adoption of a new rule apply to this case. The first exception is that a

new rule should be applied retroactively if it places "'certain kinds of criminal conduct beyond the power of the criminal lawmaking authority to proscribe.'" *Teague*, 109 S.Ct. at 1075 (citation omitted). This exception has nothing to do with the new rule advocated by the petitioner. The second exception limits the adoption of new rules to "those new procedures without which the likelihood of an accurate conviction is seriously diminished." *Id.* at 1076–77. The rule advocated by the petitioner has nothing to do with the accuracy of his conviction. Thus, neither of the exceptions justifying the adoption of a new rule applies here.

The district court attempted to limit the restriction upon the collateral application of "new rules" to trial and sentencing proceedings. We find this limitation contrary to the very purpose of the restriction upon the creation of "new rules," which is to validate "reasonable, good-faith interpretations of existing precedent made by state courts...." *Saffle*, 110 S.Ct. at 1260. If the "new rule" cases bar a federal court from creating new rules to test the validity of state trial proceedings, then even less authority exists for a federal court to create new rules expanding collateral review to post-trial events. We note that *Penry v. Lynaugh*, —— U.S. ——, 109 S.Ct. 2934, 2944, 106 L.Ed.2d 256 (1989), expanded the "new rule" restriction from the setting of trial proceedings to sentencing proceedings. The Court justified this extension by noting that collateral challenges to sentences "'delay the enforcement of the judgment at issue and decrease the possibility that there will at some point be the certainty that comes with an end to litigation.'" *Id.* (citations omitted). We think that this same rationale justifies applying

*Teague* to foreclose this new assault upon the finality of state judgments that would come from recognizing petitioner's claims.

The district court also held that even if *Teague* is applicable to petitioner's claim, the claim is not new because it stems from *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). While *Gregg* held that a court must find aggravating circumstances *at the time* it imposes the death penalty, we do not believe that *Gregg* comes close to compelling the rule that petitioner seeks. *Saffle*, 110 S.Ct. at 1261. The Court has cautioned that the test for a new rule "would be meaningless if applied at this level of generality," *Sawyer v. Smith*, —— U.S. ——, 110 S.Ct. 2822, 2828, 111 L.Ed.2d 193 (1990), and we decline to so apply it.[1]

### B.

We note further that the scope of federal habeas corpus review is limited to reviewing state court trial and sentencing procedures for "wrongs of a constitutional dimension." *Wainwright v. Goode*, 464 U.S. 78, 83, 104 S.Ct. 378, 381, 78 L.Ed.2d 187 (1983). The scope of this review does not encompass petitioner's challenge to his conviction based on his post-conviction conduct.

The Court has generally observed that "the existence merely of newly-discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus." *Townsend v. Sain*, 372 U.S. 293, 317, 83 S.Ct. 745, 759, 9 L.Ed.2d 770 (1963). In *Clanton v. Muncy*, Clanton challenged the state habeas court's refusal in a capital case to hear evidence that Clanton sought to introduce concerning his

---

1. We likewise reject petitioner's reliance on *Johnson v. Mississippi*, 486 U.S. 578, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988). In *Johnson*, the sole evidence supporting one of the aggravating circumstances consisted of a copy of Johnson's commitment to prison in 1963 following his New York conviction for assault. The prosecutor repeatedly referred to the commitment document at the sentencing hearing. After the Mississippi Supreme Court affirmed petitioner's death sentence, a New York court reversed the 1963 conviction. The Mississippi Supreme Court then refused to reconsider the death sentence but the United States Supreme Court reversed. Here, the Commonwealth did not rely during resentencing on any impermissible evidence in requesting the death penalty for petitioner. Similarly, petitioner's reliance on *Ford v. Wainwright*, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1985), to create a colorable constitutional claim is unavailing. The post-conviction hearings mandated by *Ford* are limited to the unique circumstances of a petitioner's insanity.

abused childhood. 845 F.2d 1238, 1243 (4th Cir.1988). In *Clanton,* we held that "Clanton's argument concerning the refusal to hear new evidence does not state a constitutional claim." *Id.* The same reasoning applies with equal force here.

Petitioner's claim is in essence not for habeas relief, but for executive clemency. Affixing a constitutional label to a petition for clemency will not suffice to draw the federal courts into reviewing pleas of lenity from state prisoners based upon their post-conviction conduct. Such claims from state inmates would be legion, and the federal courts would lack guidance in law for distinguishing among them. Where a conviction has no constitutional infirmity and where a sentence has been lawfully imposed, a federal habeas court should be loathe to overturn it. We may not freely substitute our own judgment for that of sentencing juries or state executives, nor may we thereby throw into question every capital conviction resting on the aggravating circumstance of future dangerousness. While petitioner has every right in our system to seek clemency, this is not the proper forum for that appeal. "Discharge from conviction through habeas corpus is not an act of judicial clemency, but a protection against illegal conduct." *Brown v. Allen,* 344 U.S. 443, 465, 73 S.Ct. 397, 411, 97 L.Ed. 469 (1953). The lawfulness of petitioner's conviction and sentence is not in question, and we must accordingly decline to grant him the relief that he seeks.

### III.

For the foregoing reasons, the judgment of the district court is reversed and the stay of execution is hereby vacated.

REVERSED.