Willie Lloyd **TURNER**, Petitioner–Appellant,

v.

John **JABE**, Warden, Respondent–Appellee.

No. 95–4005.

United States Court of Appeals, Fourth Circuit.

Submitted May 23, 1995.

Decided May 24, 1995.

Ordered Published June 27, 1995.

---

Walter J. Walvick, James vanR. Springer, Adam Proujansky, Dickstein, Shapiro & Morin, L.L.P., Washington, DC; Howard F. Goldstein, Michael F. Colosi, Fried, Frank, Harris, Shriver & Jacobson, New York City, for appellant.

Robert H. Anderson, III, Office of the Atty. Gen. of Virginia, Richmond, VA, for appellee.

Before HALL, LUTTIG, and MICHAEL, Circuit Judges.

Affirmed by published opinion. Judge MICHAEL wrote the majority opinion, in which Judge K.K. HALL concurred. Judge LUTTIG wrote a separate opinion concurring in the judgment.

## OPINION

MICHAEL, Circuit Judge:

Willie Lloyd Turner, who has been on death row in Virginia for fifteen years, is scheduled to be executed on May 25, 1995. Turner has filed a single-issue petition for a writ of habeas corpus (his fourth federal habeas petition overall) arguing that the Commonwealth of Virginia would violate the Eighth Amendment's prohibition against cruel and unusual punishment by executing him after the fifteen years he has spent on death row under allegedly torturous conditions. The district court dismissed his petition. We hold that Turner has inexcusably abused the writ, and therefore we affirm the judgment of the district court.

I

A. *Procedural History*

The facts of Turner's crime have been set forth on several occasions, *see Turner v. Williams*, 35 F.3d 872 (4th Cir.1994), *cert. denied sub nom. Turner v. Jabe,* —— U.S. ——, 115 S.Ct. 1359, 131 L.Ed.2d 216, (1995), as has the extensive procedural history of his case, *see id.* We need only summarize here the relevant procedural history.

On July 12, 1978, Turner murdered W. Jack Smith, Jr., during an armed robbery of Mr. Smith's jewelry store. In December 1979 a Virginia jury convicted him and fixed his sentence at death. The trial court imposed the death penalty on February 6, 1980. Turner appealed his conviction and death sentence, the Supreme Court of Virginia affirmed, and the Supreme Court of the United States denied his certiorari petition.

Turner then filed a habeas petition in Virginia circuit court. The circuit court dismissed the petition, the Supreme Court of Virginia refused his petition for appeal, and the Supreme Court of the United States denied his petition for certiorari. Turner next filed a federal habeas petition in the United States District Court for the Eastern District of Virginia. The district court denied the petition, our court affirmed, and Turner again petitioned the Supreme Court for certiorari review. (Before filing that petition he submitted two more habeas petitions—one federal, one state—which were dismissed.) This time the Supreme Court granted his certiorari petition, and in April 1986 the Court vacated his death sentence.[1]

In January 1987 Turner returned to Virginia circuit court for resentencing. Once again, a jury recommended the death penalty. In March 1987 the circuit court imposed the death penalty, and on direct appeal the Supreme Court of Virginia affirmed. In May 1988 the Supreme Court of the United States denied his petition for certiorari.

In September 1988 Turner filed a habeas petition in Virginia circuit court. The circuit court dismissed the petition, and in April 1991 the Supreme Court of Virginia denied his appeal.

In December 1991 Turner filed a federal habeas petition in the Eastern District of Virginia. The district court denied his petition in February 1992. We affirmed on September 28, 1994. On March 20, 1995, the Supreme Court denied his petition for certiorari.

In the final analysis, fifteen years elapsed between Turner's original death sentence (February 1980) and the Supreme Court's final denial of certiorari in *Turner II* (March 1995). Over four and one-half of those fifteen years were spent on collateral review in *Turner I.* The collateral proceedings in *Turner II* consumed another eight years, bringing the total to twelve and one-half years on collateral review.

### B. *Turner's Latest Challenge*

On April 24, 1995, around one month after the Supreme Court last denied certiorari in *Turner II,* the Virginia circuit court scheduled Turner's execution for May 25, 1995. On April 27, three days after that scheduling order, Turner initiated yet another challenge to his execution by filing a single-issue habeas petition in the Supreme Court of Virginia, his fourth state habeas petition. He argued that to execute him now, after he has endured the psychological torture of fifteen years on death row, would violate the Eight Amendment's prohibition against cruel and unusual punishment. For a remedy, he asked that the court order the Commonwealth to commute his death sentence to a sentence of life imprisonment without the possibility of parole.

Turner's Eighth Amendment claim drew largely from Justice Stevens's March 27, 1995, memorandum respecting the denial of certiorari in *Lackey v. Texas,* —— U.S. ——, 115 S.Ct. 1421, 131 L.Ed.2d 304 (1995). In *Lackey* the Supreme Court unanimously declined to review a habeas petitioner's claim that the Eighth Amendment prohibited the execution of a prisoner who had already spent seventeen years on death row. Justice Stevens wrote to say that he thought the issue was important and undecided and one that would benefit from further study in the state and federal courts. (Justice Breyer agreed that the issue was important and undecided. *Id.* —— U.S. at ——, 115 S.Ct. at 1422. None of the other Justices expressed a view one way or the other.) According to Turner, he had not anticipated filing another

---

1. We will use *"Turner I"* to refer to the original sentencing and related collateral proceedings leading up to and including the Supreme Court's April 1986 vacatur. We will use *"Turner II"* to refer to the 1987 resentencing and related collateral proceedings that concluded with the Supreme Court's March 20, 1995, denial of certiorari.

habeas petition after the Supreme Court's March 20, 1995, denial of his last certiorari petition, but he was compelled to do so after he learned of Justice Stevens's memorandum in *Lackey.*

On May 15, 1995, the Supreme Court of Virginia dismissed Turner's habeas petition on the ground that it was procedurally defaulted under § 8.01–654(B)(2) of the Code of Virginia, Virginia's "abuse of the writ" statute.[2] The petition then moved to the Eastern District of Virginia, where it became Turner's fourth federal habeas petition. The district court dismissed the petition on the merits. Turner appeals.

## II

■ The Commonwealth urges that the federal abuse-of-the-writ doctrine precludes us from reviewing the merits of Turner's Eighth Amendment claim.[3] The Commonwealth explains that Turner could have raised this claim in his third federal habeas petition, the petition he filed in December 1991 in *Turner II.* Because the Commonwealth has satisfied its burden of pleading abuse of the writ, *see McCleskey v. Zant,* 499 U.S. 467, 494, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991), Turner has the "burden to disprove abuse," *id.*

■ The standard used to excuse an abuse of the writ is well established. Turner must show "cause" for failing to raise his claim in an earlier petition and "actual prejudice" re-

sulting from the constitutional violation he alleges. Or, in the alternative, he must show that a "fundamental miscarriage of justice" would result from our failure to entertain his claim on the merits. *Id.* at 494–95, 111 S.Ct. at 1470. We conclude below that Turner has established neither cause nor a fundamental miscarriage of justice. Therefore, we will not excuse his abuse of the writ.

### A. *Cause*

■ "[C]ause ... requires a showing of some external impediment preventing counsel from constructing or raising the claim." *Murray v. Carrier,* 477 U.S. 478, 492, 106 S.Ct. 2639, 2648, 91 L.Ed.2d 397 (1986). The existence of cause here hinges on whether Turner can show that "some objective factor external to the defense," *id.* at 488, 106 S.Ct. at 2645, impeded his efforts to raise in his December 1991 petition his new Eighth Amendment claim. Turner argues that he could not have raised this issue in 1991 because neither the legal nor factual bases for his claim were then available. *See id.*

### 1. *The novelty of Turner's claim*

Turner first argues that his claim raises a novel legal issue that had not yet entered the legal landscape when he filed his 1991 petition. To succeed in this argument, Turner must show that his claim is "so novel that its legal basis [was] not reasonably available,"

**2.** This statute says, "No writ shall be granted on the basis of any allegation the facts of which petitioner had knowledge at the time of filing any previous petition." The Supreme Court of Virginia presumably found that Turner could have raised in his September 1988 state habeas petition the Eighth Amendment claim he now advances.

Turner argues, and the district court below apparently agreed, that his claim cannot be defaulted under Virginia law because the Supreme Court of Virginia's dismissal order, on its face, does not identify any procedural bar. Turner says that the dismissal order might be based on the merits of the federal constitutional issue because the Commonwealth's motion to dismiss argued the merits in addition to procedural default. But the dismissal order says that the court "grant[ed] the respondent's motion to dismiss" and that two Justices "concur[red] in the result, but would dismiss the petition ... on its merits."

Obviously, then, the majority did not reach the merits and instead relied on the procedural default; there is no other way to read the dismissal order. It does not "fairly appear" to rest on or be interwoven with federal law; rather, "[i]t 'fairly appears' to rest primarily on state law." *Coleman v. Thompson,* 501 U.S. 722, 740, 111 S.Ct. 2546, 2559, 115 L.Ed.2d 640 (1991). In any event, in light of our ruling today that Turner cannot excuse his (federal) abuse of the writ, we need not decide the substantially similar issue whether he should be excused for his state procedural default.

**3.** *See* Rule 9(b) of the Rules Governing Habeas Corpus Proceedings ("A second or successive petition may be dismissed ... if new and different grounds are alleged, [and] the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ.").

*Reed v. Ross,* 468 U.S. 1, 16, 104 S.Ct. 2901, 2910, 82 L.Ed.2d 1 (1984), to him in 1991. Put another way, Turner must show that in 1991 his lawyer did not have "a 'reasonable basis' upon which to develop [this] legal theory," *id.* at 17, 104 S.Ct. at 2911.

Turner's argument here basically is this: "it was not until November of 1993, when the Privy Council rendered its landmark decision in *Pratt & Morgan,* that the basis for the claim here became obvious," Habeas Petition at ¶ 109. *See also id.* at ¶ 113 ("the legal theory supporting this petition [did] not mature until the *Pratt & Morgan* decision in 1993"). Turner is referring to *Pratt v. Attorney General for Jamaica,* [1994] 2 A.C. 1, 4 All E.R. 769 (P.C.1993) (en banc), where the Privy Council held that a delay of fourteen years between petitioner's death sentence and his execution violated the Jamaican constitution. We cannot agree that this issue suddenly emerged in *Pratt.*

First, if Turner wishes to cite the Privy Council he must acknowledge that in 1983 the Privy Council rejected, over a dissent, a constitutional attack based on the delay between a death sentence and execution. *See Riley v. Attorney General of Jamaica,* [1983] 1 A.C. 719, 3 All E.R. 469 (P.C.1983). Although *Pratt* overruled *Riley* and adopted the views of the *Riley* dissenters, *Riley* clearly demonstrates that the issue was a live one by 1983. *See Engle v. Isaac,* 456 U.S. 107, 133 n. 41, 102 S.Ct. 1558, 1574 n. 41, 71 L.Ed.2d 783 (1982) ("Even those decisions rejecting the defendant's claim, of course, show that the issue had been perceived by other defendants and that it was a live one in the courts at the time."); *Delo v. Stokes,* 495 U.S. 320, 322, 110 S.Ct. 1880, 1881, 109 L.Ed.2d 325 (1990) (per curiam) (prior dissenting opinions discussing the claim refuted petitioner's argument that his claim was novel).

Second, Turner's argument that the legal basis for his claim first appeared in *Pratt* ignores the citations in his current habeas petition and the Commonwealth's motion to dismiss that pre-date both *Pratt* and, significantly, Turner's 1991 petition. We briefly set out a few of these decisions; by no means do we intend our presentation to be exhaustive.

Decades before Turner filed his 1991 petition, a habeas petitioner in the Ninth Circuit argued that he should not be executed "because he has been confined in a death cell for eleven and one-half years, thus he has been subjected to cruel and unusual punishment." *Chessman v. Dickson,* 275 F.2d 604, 607 (9th Cir.1960) (Chambers, C.J.) (application for certificate of probable cause). The court responded: "It may show a basic weakness in our government system that a case like this takes so long, but I do not see how we can offer life (under a death sentence) as a prize for one who can stall the processes for a given number of years, especially when in the end it appears the prisoner never really had any good points." *Id.* (This case even supports Turner's argument that we ought to distinguish between innocent delays and delays caused by a defendant's dilatory tactics.)

In the 1970s the Supreme Court of California, in construing the California constitution, concluded that capital punishment was cruel and unusual and therefore unconstitutional. *People v. Anderson,* 6 Cal.3d 628, 100 Cal. Rptr. 152, 493 P.2d 880 , *cert. denied,* 406 U.S. 958, 92 S.Ct. 2060, 32 L.Ed.2d 344 (1972). In the course of its opinion the court observed:

> The cruelty of capital punishment lies not only in the execution itself and the pain incident thereto, but also in the dehumanizing effects of the lengthy imprisonment prior to execution during which the judicial and administrative procedures essential to due process of law are carried out. Penologists and medical experts agree that the process of carrying out a verdict of death is often so degrading and brutalizing to the human spirit as to constitute psychological torture. Respondent concedes the fact of lengthy delays between the pronouncement of the judgment of death and the actual execution, but suggests that these delays are acceptable because they often occur at the instance of the condemned prisoner. We reject this suggestion. An appellant's insistence on receiving the benefits of appellate review of the judgment condemning him to death does not render

the lengthy period of impending execution any less torturous or exempt such cruelty from constitutional proscription.

100 Cal.Rptr. at 166–67, 493 P.2d at 894–95 (footnotes omitted).

In the 1980s a habeas petitioner in the Tenth Circuit raised an Eighth Amendment claim "concerning the repeated setting and staying of execution dates...." *Andrews v. Shulsen,* 600 F.Supp. 408, 431 (D. Utah 1984), *aff'd,* 802 F.2d 1256 (10th Cir.1986), *cert. denied,* 485 U.S. 919, 108 S.Ct. 1091, 99 L.Ed.2d 253 (1988). And a petitioner in the Ninth Circuit, too, raised a claim similar to Turner's:

He contend[ed] that the close punitive confinement he has endured since August, 1973, [thirteen years] uncertain as to whether or not he would be executed or when, has produced a state of fear and anxiety in him that serves no penal purpose. He further contend[ed] that the long delays, particularly prior to the resentencing, were in no way attributed to him.

*Richmond v. Ricketts,* 640 F.Supp. 767, 802–03 (D. Ariz.1986), *aff'd, Richmond v. Lewis,* 948 F.2d 1473, 1491 (9th Cir.1990) (rejecting claim "that fulfillment of his sentence after sixteen years on death row would constitute cruel and unusual punishment in violation of the eighth and fourteenth amendments"), *rev'd. on other grounds,* —— U.S. ——, 113 S.Ct. 528, 121 L.Ed.2d 411 (1992), *vacated,* 986 F.2d 1583 (9th Cir.1993).

From this cursory review it is apparent that, by the time Turner filed his December 1991 petition, various forms of the issue he now advances "had been perceived by other defendants," *Isaac,* 456 U.S. at 133 n. 41, 102 S.Ct. at 1574 n. 41, and "had been percolating in the lower courts for years," *Smith v. Murray,* 477 U.S. 527, 537, 106 S.Ct. 2661, 2667,

91 L.Ed.2d 434 (1986). The Eighth Amendment principles underlying his claim had been around even longer. *See, e.g., Louisiana ex rel. Francis v. Resweber,* 329 U.S. 459, 463, 67 S.Ct. 374, 376, 91 L.Ed. 422 (1947) (plurality opinion) ("The traditional humanity of modern AngloAmerican law forbids the infliction of unnecessary pain in the execution of the death sentence."). Turner's current habeas petition confirms this.[4] Consequently, "we cannot say that [Turner] lacked the tools to construct [his] constitutional claim [in 1991]." *Isaac,* 456 U.S. at 133, 102 S.Ct. at 1574. And since he had the tools to construct his claim in 1991, it is irrelevant that he did not then have the benefit of the Privy Council's decision in *Pratt* and Justice Stevens's memorandum in *Lackey. See Smith,* 477 U.S. at 537, 106 S.Ct. at 2667 (explaining that "the question is not whether subsequent legal developments have made counsel's task easier, but whether at the time of the default the claim was 'available' at all").

The district court below ruled that Turner's claim is sufficiently novel to show cause. The court based its ruling on its reading of Justice Stevens's memorandum in *Lackey,* specifically, Justice Stevens's characterization of this claim as a "novel" one. But Justice Stevens was not addressing the novelty of the issue in the context of a "cause" inquiry. Perhaps by "novel" he simply meant "undecided." Significantly, Justice Stevens said that "the claim is not without foundation" and demonstrated this with citation to authorities that pre-date Turner's 1991 petition. *See, e.g., Lackey,* —— U.S. at ——–——, 115 S.Ct. at 1421–22 (Stevens, J., memorandum respecting the denial of certiorari) (discussing, for example, how the claim is supported by the plurality opinion in *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909,

**4.** *See, e.g.,* Habeas Petition at ¶ 12 ("the constitutional basis of this claim has its roots firmly planted in three centuries of English common law"); *id.* at ¶ 78 ("[t]he torturous effects of ... a lengthy stay on death row ... have been widely noted by jurists during the last three decades"); *id.* at ¶ 95 ("[i]t is well-established that the infliction of extreme mental anguish can be a form of unconstitutional torture"). Indeed, one of the law review articles quoted by Turner and published before Turner's 1987 resentencing pro-

ceeding said: "The physical and psychological pressure besetting capital inmates has been widely noted.... Courts and commentators have argued that the extreme psychological stress accompanying death row confinement is an eighth amendment violation in itself or is an element making the death penalty cruel and unusual punishment." Wood, *Competency for Execution: Problems in Law and Psychiatry,* 14 Fla.St. U.L.Rev. 25, 37–39 (1986).

49 L.Ed.2d 859 (1976), as well as the dissenting opinions of Lords Scarman and Brightman in *Riley, supra* ). Accordingly, and in light of our discussion above, the district court erred in concluding that Turner had no reasonable basis to make this claim until Justice Stevens wrote in *Lackey. See McKenzie v. Day,* 57 F.3d 1461 (9th Cir.1995) (observing that "[w]hile Justice Stevens' memorandum in *Lackey* has given prominence to the argument that delay in carrying out a death sentence constitutes cruel and unusual punishment, the legal theory underlying the claim is not new"), *opinion adopted,* 57 F.3d 1493, (9th Cir.1995) (en banc), *cert. denied,* —— U.S. ——, 115 S.Ct. 1840, 131 L.Ed.2d 846 (1995).[5]

## 2. *The factual predicate for Turner's claim*

Turner also argues that the issue he now advances could not have been raised in his 1991 federal habeas petition because at that time he lacked the factual predicate for his claim. He says "the claim is only now becoming ripe for adjudication," Habeas Petition at ¶ 14. We disagree.

Turner's claim, which at bottom pleads that he has suffered enough, has two factual components. The first component is temporal and relates to his lengthy stay on death row, including generally the concomitant psychological trauma of such a lengthy stay. The second component is non-temporal and relates to the specific conditions of his confinement, conditions which he likens to torture.

As for the conditions of his confinement, Turner alleges the following facts.[6] First, he was transferred to the "death chamber" on three separate occasions (apparently in 1980, 1981 and 1985) and spent a total of six months there. While he was in the death chamber several acquaintances were execut-ed, he smelled burning flesh after one execution, and the guards taunted him, showed him the electric chair, and tested it near his cell. Second, several execution dates were set between 1980 and 1986. Third, he came within hours of execution in 1985. And fourth, he emphasizes his detention from April 1987 through February 1994 in the terrible "M–Building" at Powhatan Correctional Center. In particular, he focuses on his stay in the isolation area of the M–Building, which lasted from April 1987 through early 1991, when he was transferred to the M–Building's segregation area.

It is apparent that all of these events and conditions of confinement that Turner describes occurred prior to his filing the December 1991 petition, with the possible exception of his detention in the segregation area of the M–Building, which took place both before and after his 1991 petition was filed. With respect to the M–Building, by the time his 1991 petition was filed he had for years been detained there under the allegedly torturous conditions he now describes. All of this could have been raised in his 1991 petition.

As for the temporal component of his claim, Turner emphasizes that he has been on death row for fifteen years, a fact that he could not have included in his 1991 petition. This is undoubtedly true but irrelevant. "The question is whether petitioner possessed, or by reasonable means could have obtained, a sufficient basis to allege a claim in the first petition and pursue the matter through the habeas process," *McCleskey,* 499 U.S. at 498, 111 S.Ct. at 1472. Turner had a sufficient basis to allege his claim in December 1991 and pursue it through habeas. To be sure, had he raised the claim in 1991 it would have been based on twelve, not fifteen, years on death row. But Turner cannot seriously contend that his Eighth Amendment theory (if it has merit at all) only works for prisoners on death row for more than twelve

---

**5.** Of course, Lackey raised this claim without the benefit of Justice Stevens's memorandum.

**6.** There has not been an evidentiary hearing on the conditions of Turner's confinement or other facts relating to his claim of psychological torture. For our purposes we will assume that the facts set forth in Turner's petition are accurate. As a separate matter, we note that, according to the Commonwealth, Turner has never brought a 42 U.S.C. § 1983 challenge to the conditions of his confinement.

years. (Indeed, the Privy Council's opinion in *Pratt, supra,* upon which Turner relies so heavily, suggests that more than five years on death row would presumptively constitute "inhuman or degrading punishment" under the Jamaican constitution.) At best Turner is suggesting that evidence of an additional few years on death row makes his claim stronger than it would have been had he raised it in 1991. But the Supreme Court has made clear that the "[o]mission of the claim will not be excused merely because evidence discovered later might also have ... strengthened the claim." *McCleskey,* 499 U.S. at 498, 111 S.Ct. at 1472.

In any event, while his 1991 petition was pending in the district court (through February 1993), Turner could have moved to amend it to add this claim.[7] Alternatively, he could have included this claim in his 1991 petition and sought leave to amend (while it was pending in district court) to add the additional time spent on death row as well as any additional facts about the conditions of his confinement (*e.g.,* his continued detention in the segregation area of the M–Building). Had he included this claim in his 1991 petition, it would have been obvious to the district court that he would continue to be detained on death row for as long as it took that petition to get through federal habeas. In this connection, when Turner's 1991 petition was pending in our court on appeal (through September 28, 1994) we could have taken notice that although his petition said "twelve years on death row," he would have

then been on death row for over fourteen years.[8]

Finally, we note that the implications of Turner's argument here are unsettling. Under his argument a habeas petition should never raise this Eighth Amendment claim until the eve of execution, for only then would the claim be sufficiently strong and ripe. And a petitioner could never abuse the writ by failing to raise this issue in an earlier petition, for he could always argue that the factual predicate had just developed.

### 3. *Conclusion*

Turner cannot show cause to excuse his abuse of the writ. The legal and factual predicates for his claim were available in December 1991 when he filed his third federal habeas petition. "[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause...." *Carrier,* 477 U.S. at 486, 106 S.Ct. at 2644. Because he cannot establish cause, we do not consider whether he can show actual prejudice. *Isaac,* 456 U.S. at 134 n. 43, 102 S.Ct. at 1575 n. 43.

### B. *Fundamental Miscarriage of Justice*

■ Because Turner has been unable to establish cause, his abuse of the writ will be excused only if he can show that federal review of his claim is necessary to prevent a fundamental miscarriage of justice.

The Supreme Court has repeatedly "emphasized the narrow scope of the fundamen-

---

7. In *McKenzie v. Day,* 57 F.3d 1461 (9th Cir. 1995), the petitioner had been on death row for two decades when he filed his third habeas petition to raise, *inter alia,* an Eighth Amendment claim like Turner's. Over a dissent, the panel opined that this claim "could have been brought much earlier, quite possibly as early as his first and second federal habeas petitions," *id.* at 1464, which were filed in 1981 (after six years on death row) and 1985 (after ten years on death row), respectively. The court noted that McKenzie "could have moved to amend his first petition to add that claim at any time prior to August 1985 [ten years on death row], when the petition was finally resolved by the district court." *Id.* at n. 6. The Ninth Circuit, sitting en banc, adopted the panel opinion. *McKenzie v. Day,* 57 F.3d 1493 (9th Cir.1995) (en banc), *cert. denied,* —— U.S. ——, 115 S.Ct. 1840, 131 L.Ed.2d 846 (1995).

8. If Turner's Eighth Amendment theory has merit, any suggestion that an additional year or two on death row can somehow be the difference between a successful and unsuccessful claim would lead to the following unprincipled result: If petitioners A and B were sentenced to death on the same date but A's collateral review happened to end one year earlier than B's, A could be put to death while B would be spared. This hypothetical demonstrates that what drives Turner's theory is not time *per se* but rather the psychological stress he says is associated with a lengthy detention on death row. *See* Turner's Appellate Brief at 31 ("it is not just the accumulation of years in prison that makes the ultimate punishment of execution cruel and unusual, but the conditions that accompanied those years").

tal miscarriage of justice exception," *Sawyer v. Whitley,* — U.S. —, —, 112 S.Ct. 2514, 2519, 120 L.Ed.2d 269 (1992), and has limited it to those "extraordinary instances," *McCleskey,* 499 U.S. at 494, 111 S.Ct. at 1470, where the petitioner "makes a proper showing of actual innocence," *Herrera v. Collins,* — U.S. —, —, 113 S.Ct. 853, 862, 122 L.Ed.2d 203 (1993).

The Supreme Court has applied the "actual innocence" exception in only two types of cases. The first is where a petitioner claims to be actually innocent of the crime for which he was convicted. *Carrier,* 477 U.S. at 496, 106 S.Ct. at 2649–50. The second is where a petitioner claims to be actually innocent of his death sentence. *Sawyer,* — U.S. at — – —, 112 S.Ct. at 2519–25. In either case, "a claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera,* — U.S. at —, 113 S.Ct. at 862.

Turner cites *Sawyer* and argues that he is actually innocent of the death penalty, specifically, that he is now "ineligible for capital punishment," Habeas Petition at ¶ 110. The short answer is that *Sawyer*'s application of the actually-innocent-of-the-death-penalty exception focuses on claimed constitutional errors *at sentencing,* essentially errors relating to an aggravating circumstance or some other condition of eligibility under applicable state law. Thus, the petitioner must "show by clear and convincing evidence that but for a constitutional error, no reasonable juror would have found him eligible for the death penalty under the applicable state law." *Sawyer,* — U.S. at —, 112 S.Ct. at 2517. But Turner does not allege any error at his sentencing; he concedes "that his death sen-

tence was constitutionally permissible when imposed," Habeas Petition at ¶ 99. We decline *Turner*'s invitation to extend *Sawyer* here. *See Herrera,* — U.S. at —, 113 S.Ct. at 869 ("Federal habeas review of state convictions has traditionally been limited to claims of constitutional violations occurring in the course of the underlying state criminal proceedings."); *Evans v. Muncy,* 916 F.2d 163 (4th Cir.) (per curiam), *cert. denied,* 498 U.S. 927, 111 S.Ct. 309, 112 L.Ed.2d 295 (1990).[9] We note that two other circuit courts have recently suggested (albeit with no reasoning) that no miscarriage of justice would result from the failure to entertain the merits of the Eighth Amendment claim Turner now advances. *See McKenzie,* 58 F.3d at 1466 n. 11; *Porter v. Singletary,* 49 F.3d 1483, 1485 (11th Cir.1995) (per curiam).

### III

"The concept of 'abuse of the writ' is founded on the equitable nature of habeas corpus. Thus, where a prisoner files a petition raising grounds that were available but not relied upon in a prior petition ... the federal court may dismiss the subsequent petition on the ground that the prisoner has abused the writ." *Kuhlmann v. Wilson,* 477 U.S. 436, 444 n. 6, 106 S.Ct. 2616, 2622 n. 6, 91 L.Ed.2d 364 (1986) (plurality opinion).

Turner has abused the writ by raising in this federal habeas petition a claim that could have been raised in an earlier petition. He cannot show cause for his failure to raise the claim earlier, and he cannot show a fundamental miscarriage of justice. Therefore, we affirm the district court's order granting the Commonwealth's motion to dismiss his peti-

---

**9.** In *Evans* the habeas petitioner's death sentence was constitutionally imposed on the basis of one aggravating circumstance: "future dangerousness." Petitioner alleged that, in light of post-sentencing developments, he was no longer a future danger, thereby calling into question his eligibility for the death penalty under Virginia law. We rejected his claim. We noted that *Ford v. Wainwright,* 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986) (habeas case holding that the

Eighth Amendment prohibits the execution of insane persons), relied on by Turner here, was "limited to the unique circumstances of the petitioner's insanity," 916 F.2d at 166 n. 1. "We note[d] further that the scope of federal habeas corpus review is limited to reviewing state court trial and sentencing procedures for 'wrongs of a constitutional dimension,' " *id.* at 166 (quoting *Wainwright v. Goode,* 464 U.S. 78, 104 S.Ct. 378, 78 L.Ed.2d 187 (1983)).

tion. The mandate of this court shall issue forthwith.[10]

*AFFIRMED.*

LUTTIG, Circuit Judge, concurring in the judgment:

It is a mockery of our system of justice, and an affront to lawabiding citizens who are already rightly disillusioned with that system, for a convicted murderer, who, through his own interminable efforts of delay and systemic abuse has secured the almost-indefinite postponement of his sentence, to then claim that the almost-indefinite postponement renders his sentence unconstitutional. This is the crowning argument on behalf of those who have politicized capital punishment even within the judiciary. With this argument, we have indeed entered the theater of the absurd, where politics disguised as "intellectualism" occupies center stage, no argument is acknowledged to be frivolous, and common sense and judgment play no role. And while this predictable plot unfolds with our acquiescence, if not our participation, we lament the continuing decline in respect for the courts and for the law.

Petitioner does not contest his guilt. He concedes, as he says he must, that his death sentence was constitutionally permissible when imposed. He even concedes that, until a month and a half ago, he himself did not wish to pursue further appeals. He has brought four state *habeas* petitions and this is his fourth federal *habeas* petition. His various claims have now been reviewed in at least twenty different federal and state proceedings. He has been accorded every possible opportunity to test the legitimacy of his conviction and sentence. The delay of which he now complains is a direct consequence of his own litigation strategy, coupled (ironically, although not surprisingly) with the customary leniency allowed him by the courts to press his claims as effectively as possible.

This is not—or at least it should not be—a political game. The object is to apply the law, not to defeat it through subterfuge. Petitioner's claim should be recognized for the frivolous claim that it is, and his delay in raising it, for the manipulation that it is. *See McKenzie v. Day,* 57 F.3d 1493 (9th Cir.1995) (*en banc*), cert. denied, —— U.S. ——, 115 S.Ct. 1840, 131 L.Ed.2d 846 (1995). As long as the courts indulge such sophistic arguments, then such arguments will be made, and the politicization of capital punishment within the courts will continue.

---

**10.** Turner's stay of execution is hereby denied. *See Stokes,* 495 U.S. at 321, 110 S.Ct. at 1881 ("A stay of execution pending disposition of a second or successive federal habeas petition should be granted only when there are 'substantial grounds upon which relief might be granted.' *Barefoot v.*

*Estelle,* 463 U.S. 880, 895, 103 S.Ct. 3383, 3395–96, 77 L.Ed.2d 1090 (1983). There are no 'substantial grounds' present in this case, because respondent's fourth federal habeas petition clearly constitutes an abuse of the writ.").